This case number 419-0232, Frieden v. Bott, for the appellant, we have Mr. Duco, is that the correct pronunciation? And then for the applee, Mr. Freeman. You may proceed, counsel. Good afternoon, and may it please the Court. Illinois law has long held that a party who maintains control over a construction site is the logical party of condom to impose a duty to ensure worker safety. And also that the question of whether a party has sufficient control over a work site in order to impose that duty is a question of fact to be decided by a jury, generally speaking, and only when the evidence is wholly insufficient to create a question of fact as to whether there has been sufficient control over the work site is that something that can be decided as a matter of law on summary judgment. Here, the defendant planned out the entire project, which was to regroup his own home himself. He bought all of the construction materials himself by going to the night. He recruited all of the workers himself. He decided when to start the project and when to stop it, and in fact planned the entire project around his own vacation time, a two-week period of time that he took in order to do the project. Counsel, was Mr. Frieden an independent contractor? Mr. Frieden was a volunteer worker. And we've asserted that just as a Illinois law holds that a volunteer worker can be an agent and an agency relationship can be created with a volunteer worker, here it does not matter that Mr. Frieden was volunteering his time in order to help out his brother-in-law to regroup his house for the purposes of establishing control-related liability over the work site. Also, the fact shows that Mr. Bott, the defendant, decided the order of work to be done. He decided to do the front half of the roof the first week and the back half of the roof the second week. He decided who should be doing what while they were there. He decided that certain people should be pulling off the shingles and decided that certain people should be pulling off bad pieces of plywood. He also decided that certain plywood didn't need to be removed while others did. And the defendant made the decision on what particular pieces of plywood needed to be removed. He also decided that Mr. Frieden should work with the defendant's son in order to remove the plywood while others removed the shingles. He also told Mr. Frieden and his son which specific pieces of plywood to remove and exactly which ones to pull off. Whereas Mr. Frieden, the plaintiff, he was actually on this two-week construction site only one day, the day that he was injured. He also did not participate at all in planning it out. He had never actually been on top of the roof until the day he came there to help with this project, which was in its second week. And he did bring his own tools, correct? Correct. So Mr. Frieden, the only tools he brought with him was a hammer and a crowbar. And was he directed at all in how to do his work? This is what I want you to do in removing or this is how I want you to do it? He was directed in the sense of exactly which specific pieces of plywood that should be removed. He was directed to work with the defendant's son in order to pull off that plywood and to the defendant purchase the new plywood and he was directed to put that new plywood in. But how he was to go about those things, he didn't receive any direction on? And if you're saying was he directed specifically how to swing a hammer, no he was not. And he said that in his testimony. However, the defendant stated in his testimony, quote, I gave direction on the roof, end quote. And that was at C-155 in the record. And also when specifically asked who was in control of the project, the defendant stated, quote, it was my project. And that's at C-157 in the record. One Illinois case stands for the proposition that volunteers are treated the same as independent contractors. There's no Illinois case that says that volunteers cannot be treated as independent contractors. Well, you asserted it as a fact in your statements a few moments ago. In the Illinois law, you said, if I understood you correctly, volunteers are treated just the same as independent contractors. And I'm wondering, looking into your brief now, you seem to say it there, too. Trial courts have erroneously interpreted the law and granted some a judgment because they thought the young can be liable for failing to provide protection to volunteer workers. And I'm looking for the case that so holds, but I don't see it. Well, I would refer the court to Holmes v. Baum, 343 Illinois Act 3D-67, which we did not cite in our brief, but which states, quote, one who volunteers services without an agreement for or expectation of reward may be a servant of the one accepting such services. Isn't this a little late, counsel, to be citing to us an oral reference to a case they were not familiar with and Mr. Freeman hasn't had an opportunity to brief in response? And so when we look at 414 or any of the other analysis under control section liability, there is no requirement that there be payment made. What we have here is somebody who has relied upon volunteer workers. And no court in Illinois has stated that somebody who is relying upon volunteers to do work is somehow immune from and owes no duty to. Well, but just as a matter of careful precision of thought, what you asserted, if I understood you correctly, maybe I didn't. It's just not the case that the volunteer workers would be treated the same as independent contractors. Is that your statement? What I'm asserting is an agency-principal relationship. And so when we have an independent contractor, when we look at section 414 liability, it's essentially in between an independent contractor and an agency relationship. So there's no doubt that Illinois courts routinely apologize to volunteer workers. That can create an agency relationship. Is there any case that holds that a volunteer worker can create an independent contractor relationship? I have not found such a case. But section 414 liability is in between an independent contractor and an agent because the defendant has maintained sufficient control over and supervisory of the work site. Over an independent contractor. Correct. There's no mention of a volunteer in section 414, correct? There's no mention of a volunteer. There's no mention of compensation either. There's no mention of payment. And when we look at the case law definition, an independent contractor is somebody who is performing a service. And that's what my client was doing. An independent contractor doesn't mean someone who's paid to do this? There's been no citations. Isn't that, well, speaking our mother tongue English, isn't that what independent contractor means? One thing it more means is that it's somebody who's not being controlled by the prison. Who just happens to show up? I mean, an independent contractor, and I think in any other context in normal parlance, would mean someone who's not an employee but is hired to do this job. Not as a direct employee. If I hire a plumber, someone to come fix my house, he's not my employee. But he's not doing it out of the goodwill of his heart. Isn't that what an independent contractor is supposed to mean? And certainly looking at that same analysis in the context of an agent or a worker, we would say that, normally speaking, an agent is someone who's being paid by the principal. However, courts have held that, including the alms court, that you do not need. Well, counsel, I don't want to hear about the alms court. If you didn't cite it to us in a brief and I have no way of looking into it now, this is just too late. So you can otherwise continue with your argument. Again, there's no authority in Illinois holding that one who controls a construction project owes a duty to provide a safe work site only to those that are paid workers. There's no doubt that Mr. Griggin, my client, was there for the sole purpose of helping the defendant do this project and to complete this project. And that's the purpose that he was there. He was an independent contractor under any means other than he wasn't being paid, but he was there to help out his brother-in-law get this job done. And if we also look at the record, the defendant testified that he was relying upon the plaintiff in order to get this project done within the timeframe he needed to, which was the one week vacation time he had taken for the second half of the project. And he even stated that, yes, you know, I needed his help in order to complete this project on time. And that's part of the reason why my client went there was to help make sure that the defendant was able to get his brother-in-law's family member to get this project done within his vacation time. And after my client was injured, the defendant had to go out and recruit other volunteers through his church in order to complete the project on time so that he could go back to work on time. And so while there's no compensation here, and certainly my client was not helping in this project, wasn't a worker on this construction project for a selfish reason or for compensation, he was there as a worker, he had a job to do, and he was there to do it. In addition to Section 404 liability, we've also stated a claim for premises liability. And if we certainly concede that getting up on a roof is an open and obvious danger. However, the rule for open and obvious danger is that it prevents somebody from having liability unless the possessor of property should anticipate that the person will encounter that open and obvious danger  Here I think we have a case where we don't even need to get into the classical deliberate encounter or distraction, because here we have a situation where the defendant, the entire purpose he invited my client to his property was to encounter the danger, which was to get up on the roof and to help him remove it. And so there's no doubt that it could be that the defendant should have anticipated that plaintiff would get up on the roof. Now, again, if we get into, of course, the deliberate encounter exception, that also should apply here. Because, again, what the standard there would be would be whether the deliberate encounter exception states that a possessor of premises is liable for an open and obvious hazard when the possessor has reason to expect that the invitee will proceed to encounter the known or obvious danger. Because to a reasonable man in this position, the advantages of doing so would outweigh the apparent risk. Now, how does that apply here? I mean, we most often see this in the context of someone having to engage in some type of dangerous behavior related to their employment. Your client could have easily just said, I'm not getting up there, it's not safe, I'm not doing it. Absolutely, and that's what the trial court stated. And, again, I think that would be error because while certainly a court might look at whether someone had alternatives, for instance, to take one path over another, one path being a dangerous path that's openly and obviously dangerous versus another path that's safe. Well, the two alternatives there is to take the safe path. Here, though, what we're saying is that would be essentially doing away with the deliberate encounter exception entirely because what you're stating then is that we could have just said, I won't go to the premises. My alternative was to just not engage in the activity I was going to the premises to engage in. And there's no court that has held that, and there's no cases that would be on the point and say, well, I can go to, I've been invited to the premises to do this or to do something else, but one of my alternatives is just to not even go to the premises at all. And there was no other alternative for my client to help with the removal project other than to get on the roof. At least there's no evidence in the record that has indicated any other way that he could have helped with the project other than to get on the roof. And it's just that there were no other alternatives that have been articulated in the record. Now, as to the compensation aspect, the bill of my Supreme Court has been clear that compensation is not a requirement of the deliberate encounter exception. It's just one of the elements that could be reviewed in a fine. And as to my client, again, while he wasn't being compensated to be there, he did go there for a specific purpose, which was to help out his brother-in-law. His brother-in-law needed help to get his roof re-roofed in time so they could get back to work in time. It had taken a week off to do it, and my client was there to do that job. And the question then is whether there's a duty owed by the defendant when he was relying upon a volunteer worker. I think even if we just step back and look at the classical four elements of what a duty is, we can see that there's also a duty there. For instance, number one would be whether it was reasonably foreseeable. Again, the defendant, he did testify that it was something that he knew was a potential danger, that somebody could fall off the roof, and he actually even tried to instruct those workers how to be safe. Number two would be the likelihood of injury. And the testimony shows of the defendant that he would anticipate if someone fell from his roof, they would be injured. And certainly common sense would hold that. Number two would be the magnitude of burden guarding against the danger. Here, the defendant testified he was saving thousands of dollars by relying upon volunteer workers to complete this construction project, whereas the day after my client got injured, the other workers went out and purchased fall safety equipment, harness anchor system, for less than $100. So the burden of putting it onto the defendant to provide the fall safety equipment, which was less than $100 each, when he's saving thousands of dollars, again shows that there's a duty. And then the final factor to consider would be the consequences of placing a burden on the defendant. And the consequences, again, here, of placing the burden on a defendant, was relying upon volunteer workers to just have a reasonable standard of providing a safe workplace when he's saving thousands of dollars and it only costs less than $100 to provide the safety harnesses. Under the general elements that we look at it in, we show that here, Mr. Bott owes a duty to Mr. Freeman. And whether it be violated or abbreviated, the question of that should be decided by the jury. Thank you. Thank you, counsel. You'll have additional time on rebuttal if you desire. Mr. Freeman? Thank you. May it please the court? Counsel? The undisputed evidence is that the defendant did not directly specify the manner in which the plaintiff was to remove the blanket. The court noted the plaintiff brought his own tools to the job site and chose the manner and means by which he was going to remove the blanket and produce his tools and do it as he saw fit. He was free to do what he wanted to do. Based on that, the defendant did not retain control of the work that the plaintiff was doing. In Section 414, the exception to the independent contractor rule has no applicability. I'm going to jump down the rabbit hole, chasing the rabbit. I would suggest to the court that the analysis of an independent contractor has absolutely no applicability to this case. The plaintiff is trying to put a square peg into a round hole. Square pegs are the facts of the case. The round hole is the independent contractor analysis. The general rule is such that, one, I use owner. When an owner hires an independent contractor, he has no liability for the negligent acts of that independent contractor or injuries to third parties. That's the general rule. The exception is, is if the owner exercises control over the independent contractor, he may then have liability for failure to exercise that control in a reasonable manner and it results in injury to someone else. Take that analysis of that square round hole and get these facts in there. You can't do it. The defendant was a homeowner. The plaintiff has got to be either an independent contractor or another. I'm not sure that he's an independent contractor. The analysis should flow just simply to the premises liability. When we get there, I'll discuss that briefly. I was reading Kearney this morning, Kearney v. Union City. As I'm reading that, it struck me again that 414 doesn't apply. Kearney talks about how an owner who hires an independent contractor may control that independent contractor in such a way that it now becomes an agent. Basically, the owner turns the I.C. into an agent and then goes on to discuss that the owner may be vicariously liable to the conduct of the agent. Vicarious liability has got to apply to some other person, either the independent contractor or the owner. To be vicariously liable, there's got to be a third party that is injured in some fashion. So Mr. Frieden can't be the independent contractor and the other? Correct. I just don't see how you can be both. But then Kearney goes on to discuss that 414 is an exception or an extension of the vicarious liability analysis. That leads me to conclude that there's got to be some third party others. Otherwise, you don't really talk about vicarious liability. The liability that an owner of property would have to any entity on the property comes from liability. I know that Kearney discusses the use of the phrase direct liability. I don't think that's a term that I can really make any distinction between vicarious liability and liability for your own negligence. I don't know if that's a term to write. I know the trial court wasn't persuaded by those arguments, but I'm still trying to get my head around the idea that that's where Kearney is now. And I would suggest that analysis would be a basis to affirm the trial court's grand summary judgment. As I listened to counsel's argument, I got the impression that he was advocating for a third exception to the open and obvious condition. He talked about deliberate encounter. I don't think he specifically mentioned distraction. That's the other recognized exception. The third exception is that the defendant has to come to his property as an exception to the open and obvious rule. I know in counsel's written submission, he suggested that somehow economic compulsion was not a requirement. I agree it's not a requirement. This is a factor to consider in evaluating whether someone would deliberately encounter a dangerous and obvious condition. The absence of economic compulsion is also a factor in considering whether there was a deliberate encounter. And I would suggest to the court that the absence of an economic compulsion or any financial component not only applies to deliberate encounter analysis, but it can also be applied to the control analysis under Section 414. There's the economic factors, the financial incentives for people to do things. The owner, for lack of a better word, because he's writing the check and paying the money, he can say, do it my way or the highway. The independent contractor can say that to his employees. So there's a fairly significant control factor there. In the case of a volunteer, in this circumstance, that control factor isn't present, nor is it our basis to encounter it, knowing what the reality is going to be. I was looking at Hastings, Exline v. Hastings in the Winters case, set up by this court a year or so ago. The circumstances in this case are conceptually no different than the Exline-Hastings case. The defendant, in that case, asked the plaintiff to use the backdoor. The defendant had alternatives. The counsel seems to have made some argument and has written to us about some absurd or extreme alternatives. But I would suggest to the court that there's reasonable alternatives. In Hastings, the defendant's trailer. If you go to the door and it's unsafe, stop, go home. That's not an unreasonable alternative. It's an alternative exit. Certainly a reasonable alternative. Without any downside, I might add, in the case of Barr, the defendant asked the plaintiff to help him to look for home. Then they arrived, looked up, saw that there were no safety harnesses, fly-offs, or anything. At that point, he could have concluded, it's dangerous, I'm going home. There's absolutely no downside. He had an evidently reasonable alternative to engage in this dangerous condition. For that reason, I think the deliberate counter-exception simply does not apply. I would ask the court to confirm some of the cases on the back of the defendant's life. And I thank you. Thank you, counsel. Any rebuttal, Mr. Duco? Just real briefly, and I thank the court. In the verdict of Carney, which is the Illinois Supreme Court decision from 2017, it holds, I don't think the whole thing is as has been described by counsel. The whole thing is that Carney clarified that Section 414 liability is direct liability. It's not based on vicarious liability. So what they're holding is the person who has control over the job site directly liable for their own negligence and failing to do some action to require that either the job be done in a safe manner or that the job be done in a way that it's safe for other people or that safety measures for the worker's safety are put in place. And so, yes, there are cases prior to Carney's decision that talk about Section 414 liability being vicarious liability. And thus, you need somebody in between the person who controls the job site and the injured person. However, Carney clarified that. And it even talks about a lot of what fellow courts have stated that Section 414 can arise under vicarious liability to clarify that that's incorrect. It is direct liability for the person who's controlling the job site, own negligence, and failing to do that. And that's what we're asking for here. We're asking that the defendant be held to have a duty for the work site that he had control over. And while certainly counsel has articulated some of the facts, such as Mr. Frieden bringing a hammer and a crowbar to the job site or not being specifically instructed on how to swing a hammer, as his argument is why there shouldn't be any control, whether there is control is generally an issue of fact. Certainly, we've got to present sufficient facts to get past that hurdle and present our case to the jury, where here, especially relying upon the defendant's own testimony that, quote, I gave direction on the roof at C-155 in the record, and also where he said it was my project, and that's who was in charge of the project and who was in charge of the worker safety of the project. He says it was my project, C-155. Thank you. Thank you, counsel. We'll take this matter under advisement and be in recess at this time.